UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 30, 2013
```

GEORGE HAYES,

                Petitioner,

    - against -

WILIAM E. LEE,

                Respondent.

**ORDER**

10 Civ. 5134 (PGG) (RLE)

PAUL G. GARDEPHE, U.S.D.J.:

        George Hayes, a New York state prisoner incarcerated at Green Haven Correctional Facility, has filed a pro se petition for a writ of habeas corpus. On July 16, 2010, this Court referred the petition to Magistrate Judge Ronald L. Ellis for a Report and Recommendation ("R&R"). (Dkt. No. 3) On July 27, 2010, Hayes filed an Amended Petition. (Dkt. No. 5) On April 8, 2011, Judge Ellis issued an R&R recommending that this Court deny the petition in its entirety. (Dkt. No. 16) Hayes has filed objections to the R&R. (Dkt. No. 20) For the reasons stated below, this Court will adopt the R&R and will deny Hayes's Amended Petition.

## BACKGROUND

        On July 10, 2007, Hayes was convicted by a jury in Supreme Court of the State of New York, New York County, of criminal possession of a weapon in the third degree, criminal possession of a controlled substance in the fourth degree, and criminal use of drug paraphernalia in the second degree. (R&R at 1)

        Hayes's convictions arose from the execution of a search warrant at 201 Linden Boulevard, Apartment 22D, in Brooklyn, on August 17, 2006. (R&R at 2 (citing Trial Tr. at 33-

34)) The police officers executing the search warrant used a hydraulic ram to take down the door of the apartment. (Trial Tr. at 36) When the police entered, Patrick McGuilkin ran into a bedroom, and Rasean Williams threw a plastic bag containing cocaine out of the living room window. (R&R at 2 (citing Trial Tr. at 37, 39); Trial Tr. at 38-39, 233) Several officers followed McGuilkin into the bedroom, where he threw himself onto the bed and appeared to reach for something under the mattress. (R&R at 2; Trial Tr. at 231-32) Officers found a fully-loaded, chrome-plated, semi-automatic 9 mm. Norinco-brand handgun under the mattress in the bedroom. (R&R at 2 (citing Trial Tr. at 196); see also Trial Tr. at 89-90)

When the police entered the bedroom, they found Hayes standing by a window. (Trial Tr. at 39) Detectives searched Hayes and found cocaine in his pocket; he was holding tinfoil wrappers used to package drugs. (R&R at 2; Trial Tr. at 39, 43, 196) In the bedroom, police also found three large black trash bags that contained clear, zip-lock plastic bags used to package drugs, a number of photographs showing Hayes in the apartment, and a bank statement addressed to Hayes at a post office box. (R&R at 2 (citing Trial Tr. at 45-55)) One of the photographs the police recovered from the trash bags in the bedroom showed Hayes sitting in that bedroom, on the bed, holding what appeared to be the same handgun found under the mattress (the "Photograph"). (Trial Tr. at 46-48, 92-94)

I. **PRETRIAL PROCEEDINGS AND TRIAL**

Before trial, defense counsel moved to exclude the Photograph as unfairly prejudicial, arguing that there was no proof as to when it was taken, and that because the Photograph "was taken on an unknown date, one cannot infer [that] my client even knew the gun was still in the apartment." Defense counsel also mentioned, in passing, that he didn't "think [the People] could prove that it is the same gun." (June 4, 2007 Pre-Trial Tr. 6-10; June 5, 2007

2

Pretrial Tr. at 14-15) The trial judge ruled that the Photograph was admissible, commenting that "It appears to be the apartment. It appears to be the gun. It is and appears to be the defendant." (June 5, 2007 Pre-Trail Tr. at 20) Defense counsel then asked the trial judge whether there were any limitations on the use of the Photograph:

> Mr. Delbaum: I have a question with respect to having admitted the allowing – the admission of the photograph. The question is, are there any restrictions, should it be, if –
>
> The Court: What kind of restrictions are you talking about?
>
> Mr. Delbaum: Well, you know the issue here is knowledge, access, dominion and control.
>
> Does that picture basically indicate any time my client – my argument that is – it is basically, if they want to show my client ate pizza last Monday, did he eat pizza this Monday.
>
> The Court: You could argue anything you want.
>
> Mr. Delbaum: Is that picture admissible for all purposes, any purpose the People want?
>
> The Court: It is him in the apartment.

(June 5, 2007 Pre-Trial Tr. at 20-21)

The decision to admit the Photograph prompted an outburst from Hayes, which led the trial judge to remove Hayes from the courtroom for the balance of the trial. (R&R at 3 (citing June 5, 2007 Pre-Trial Tr. at 21-27, 55))

At trial, the Photograph was admitted through Detective Selwyn Fonrose, who had discovered the photographs in one of the trash bags while searching the bedroom. (Trial Tr. at 44-48) Detective Desmond Stokes, a firearms expert, testified that the handgun Hayes was holding in the Photograph was the same type of semi-automatic pistol that was recovered in the bedroom, and that it was also the same color. (Trial Tr. at 82-86, 92-94) Det. Stokes conceded,

however, that he could not determine whether it was "the exact same gun," because that could only be determined by a serial number comparison, and the serial number of the handgun shown in the Photograph was not legible. (Trial Tr. at 93-94).

In connection with the use of photographs generally, the trial judge instructed the jury that

> . . . the fact that I'm admitting a photograph doesn't mean you have to do anything with it other than in the jury room put it aside and say, that's nice to know. You can make an evaluation and decide the photograph has some connection or probative value with respect to all the probative issues you are asked to figure out, use it. If it does not make sense, don't use it.

(Trial Tr. at 51)

In summation, defense counsel conceded that the gun Hayes was holding in the Photograph was – if not the same gun – "a gun that appears to be very much like [the gun that was recovered under the mattress]. . . . Certainly, the same kind of gun." (Trial Tr. at 256) Counsel argued, however, that the People had not proven that Hayes had dominion and control over the gun, or that he even knew that it was under the mattress when the search warrant was executed, noting that it was Patrick McGuilkin who had reached for the gun and therefore it was under his control. (Trial Tr. at 257-58; see also Trial Tr. at 263-64 ("even if the gun he held in that picture is the same gun, they did not prove that he knew it was under the bed") With respect to the Photograph, defense counsel argued that Hayes had been "stoned" and may "not [have] even [been] aware that somebody put this gun in his hand." (Trial Tr. at 256)

In response to defense counsel's argument that McGuilkin had dominion and control over the gun, the prosecutor argued – over defense counsel's objection – that "there is no picture of Patrick McGuilkin holding the gun. We only have a picture of George Hayes holding the gun. He's the only person who knew about the gun in that room." (Trial Tr. at 276) The

4

prosecutor also ridiculed defense counsel's argument that someone had slipped the gun into Hayes's hand and then snapped the Photograph:

> Now, does it look like he was set up here? Do you think someone slipped that gun into his hand [and] then snapped a quick picture? Look at how comfortable he is in this picture holding that gun. Look how comfortable he is in the surroundings in all of the pictures. He's comfortable in the apartment. He knew the gun was there, and he obviously had dominion and control over the gun. You could see it.

(Trial Tr. at 276)

The jury found Hayes guilty on all counts. (R&R at 4 (citing Trial Tr. at 318-19))

## II. POST-TRIAL PROCEEDINGS

Defense counsel moved to set aside the verdict, arguing that the Photograph portrayed a "prior bad act," and should only have been received for a limited purpose. (R&R at 4 (citing Litsky Decl., Ex. N)) The trial judge denied the motion. (R&R at 4 (citing Sentencing Tr. at 2)) Hayes then moved pro se for a reconstruction hearing, claiming that the transcript of the pretrial proceedings did not accurately reflect the trial judge's ruling admitting the Photograph for all purposes. (R&R at 4 (citing Litsky Decl., Ex. O)) Hayes submitted an affidavit from trial counsel, who claimed that when he asked the judge, "Is that picture admissible for all purposes, any purpose the People want?", the trial judge replied, "For all purposes." (R&R at 4 (citing Litsky Decl., Ex. O)) The court denied Hayes's motion, finding that there was no reason to question the accuracy of the transcript. (R&R at 4 (citing Litsky Decl., Ex. P))

Hayes then appealed his conviction to the Appellate Division, First Department. (R&R at 4) On appeal, Hayes argued, inter alia, that the evidence was insufficient, that the verdict was against the weight of the evidence, and that trial counsel had been constitutionally

5

ineffective in not requesting a different limiting instruction concerning the use of the Photograph.

The Appellate Division rejected these arguments and affirmed Hayes's conviction:

> Defendant's motion for a trial order of dismissal was insufficiently specific to preserve his present challenge to the legal insufficiency of the evidence supporting his weapon possession conviction (see People v Hawkins, 11 N.Y.3d 484, 492 (2008)), and we decline to review it in the interest of justice. As an alternative holding, we find that the verdict was based on legally sufficient evidence. We also find that the verdict was not against the weight of the evidence (see People v Danielson, 9 N.Y.3d 342, 348-349 (2007)). Evidence including, among other things, an incriminating photograph supported the conclusion that defendant was a member of a drug-selling operation conducted out of an apartment, and that he and the other participants jointly possessed a pistol in connection with their drug enterprise (see People v Tirado, 38 N.Y.2d 955 (1976)).
>
> Defendant's claim that his trial counsel rendered ineffective assistance by failing to request certain limiting instructions regarding the jury's use of the photograph depicting defendant holding a pistol is unreviewable on direct appeal because it involves matters outside the record concerning counsel's strategy (see People v Rivera, 71 N.Y.2d 705, 709 (1988); People v Love, 57 N.Y.2d 998 (1982)). In particular, counsel may have had a strategic reason for accepting the limiting instruction the court actually delivered, which was arguably quite favorable to defendant, and refraining from asking for a different instruction. On the existing record, to the extent it permits review, we find that defendant received effective assistance under the state and federal standards (see People v Benevento, 91 N.Y.2d 708, 713-714 (1998); see also Strickland v Washington, 466 U.S. 668 (1984)). Defendant has not shown that his counsel's acceptance of the court's instruction was unreasonable, or that it caused him any prejudice or deprived him of a fair trial.

People v. Hayes, 61 A.D.3d 432, 432-33 (1st Dept. 2009). Leave to appeal was denied on

August 12, 2009. People v. Hayes, 13 N.Y.3d 744 (2009).

### III. THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Hayes's habeas petition presents five grounds for relief:

1. the transcript of pretrial proceedings is inaccurate;

2. the trial court failed to properly balance the probative value and prejudicial effect of the Photograph;

6

3. the trial court did not give an appropriate limiting instruction to the jury concerning use of the Photograph as prior bad act evidence;

4. the Photograph was not properly authenticated, and its admission permitted the jury to speculate that the handgun shown in the Photograph was the handgun recovered in the bedroom – speculation that the prosecutor argued in summation; and

5. the Appellate Division erred in affirming Hayes's conviction, because the verdict on the weapons charge was legally insufficient and against the weight of the evidence.

(Am. Pet. (Dkt. No. 5) at 5-6)

With respect to the insufficiency claim, Judge Ellis found that habeas review was precluded, because the state court decision rejecting Hayes's appeal relied on independent and adequate state grounds. (R&R at 7-8) The Appellate Division determined that "Defendant's motion for a trial order of dismissal was insufficiently specific to preserve his present challenge to the legal insufficiency of the evidence supporting his weapon possession conviction." Hayes, 61 A.D.3d at 432. Under these circumstances, Judge Ellis concluded that Hayes's insufficiency claim was procedurally barred. (R&R at 8) Judge Ellis nonetheless went on to consider Hayes's claim on the merits, concluding that there was substantial evidence – including the photographs introduced in evidence and Hayes's possession of drug paraphernalia similar to that recovered in the apartment – indicating that Hayes was part of a drug distribution ring that operated out of the apartment, and that he had joint dominion and control over the handgun found under the mattress. (R&R at 11-12)

As to the inaccurate transcript claim, Judge Ellis concluded that Hayes was given an opportunity to resettle the record, and that he had not offered sufficient evidence to overcome the presumption that the transcript is correct. Judge Ellis also noted that Hayes had not shown prejudice resulting from the omission of the statement that he claimed was missing from the transcript. (R&R at 9)

7

Judge Ellis also rejected all of Hayes's claims concerning the admission of the Photograph, concluding that the Photograph was more probative than prejudicial, that the limiting instruction was appropriate, and that the Photograph was properly authenticated, given that an authenticating witness is not required to identify with certainty each object shown in a photograph received in evidence. (R&R at 10-11)

## IV.   HAYES'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

In his objections to the R&R, Hayes continues to argue that the Photograph was improperly admitted, because no witness testified that the handgun shown in the Photograph is the same handgun recovered under the mattress. (Pet. Obj. (Dkt. No. 20) at 2-7) Hayes further contends that the prosecutor should not have been permitted to argue in summation that the handgun in the Photograph is the same handgun that was recovered. (Id. at 8-9, 11) Hayes also argues that the admission of the Photograph permitted the jury to convict him on prior bad act evidence, and that the trial court's jury instructions concerning the Photograph were inadequate. (Id. at 8-11)

## DISCUSSION

## I.   STANDARD OF REVIEW

In evaluating a magistrate judge's R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, objections have been made to the Magistrate Judge's recommendations, "[the district court judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Razo v. Astrue, No. 04 Civ. 1348(PAC)(DF), 2008 WL 2971670, at *3 (S.D.N.Y. July 31, 2008) (citing Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y.

1991)). However, "the phrase <u>de novo determination</u> in section 636(b)(1), as opposed to <u>de novo hearing</u>, was selected by Congress 'to permit whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and recommendations.'" <u>Grassia v. Scully</u>, 892 F.2d 16, 19 (2d Cir. 1989) (quoting <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980) (emphasis in original)).

Although this Court reviews Hayes's objections to the R&R <u>de novo</u>, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), requires a district court to give deference to state court decisions on the merits. <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011) (noting that "[a] state court must be granted a deference and latitude that are not in operation when the case involves [direct] review [of a criminal conviction]").

Section 2254(d) provides that

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the
> > facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court has emphasized that, under "§ 2254(d)(1), 'an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.'" <u>Harrington</u>, 131 S.Ct. at 785 (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000)) (emphasis in <u>Williams</u>).

9

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)); see also id. at 786-87 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.")

Because the arguments that Hayes presents now are the same arguments he made to the Appellate Division in his pro se supplemental brief (see Litsky Decl., Ex. B), and because the Appellate Division "considered and rejected [Hayes's] pro se claims," Hayes, 61 A.D.3d at 433, the state court's determination of these issues was on the merits, and is entitled to deference.

## II.   AUTHENTICATION AND ADMISSION OF THE PHOTOGRAPH

Hayes argues that the Photograph was not properly authenticated under New York law, because the handgun in the Photograph was "not established to be one and the same to the contraband charged." (Pet. Obj. at 3, 8)

The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (per curiam) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). An erroneous evidentiary ruling will only warrant habeas relief if it rises to the level of a constitutional violation that deprived the defendant of a "'fundamentally fair trial.'" Rosario v. Kuhlman, 839 F.2d 918, 924-25 (2d Cir. 1988) (emphasis omitted) (quoting Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983)).

In reviewing a state court's evidentiary ruling in the context of a habeas petition, "[t]he first step . . . is to determine whether the state court decision violated a state evidentiary

10

rule, because the proper application of a presumptively constitutional state evidentiary rule would not be unconstitutional." Green v. Herbert, No. 01 Civ. 11881(SHS), 2002 WL 1587133, at *12 (S.D.N.Y. July 18, 2002). "Second, the petitioner must [prove] that the state evidentiary error violated an identifiable constitutional right." Id.

Here, the Photograph was admitted through Det. Fonrose, who found it in the bedroom in which Hayes was arrested. (Trial Tr. at 46-48) Judge Ellis concluded that "Detective Fonrose's testimony that the photograph was recovered from the apartment and that it appeared to show Hayes in the bedroom was sufficient for authentication purposes." (R&R at 11 (citing Cochrane v. McGinnis, 50 Fed. App'x 478 (2d Cir. 2002)) Hayes objects to that determination, arguing that the evidence at trial was insufficient to authenticate the Photograph, because the detectives could not say that the handgun depicted in the Photograph was the same handgun that was recovered from the apartment. (Pet. Obj. at 7-8 (citing People v. Brown, 216 A.D.2d 737, 738 (3d Dept. 1995))

Brown, relied on by Petitioner, is distinguishable. In Brown, the defendant was charged with criminal possession of weapons after four guns were found under the mattress in his bedroom. Brown, 216 A.D.2d at 737. At trial, Brown argued that the guns belonged to his brother, who had access to his apartment. Id. To demonstrate Brown's knowing possession of the weapons, the People introduced a photograph recovered in Brown's bedroom, which "depict[ed] an individual, purportedly defendant, holding a handgun." Id. Defense counsel objected to the photograph, arguing that there was no proof that the gun depicted in the photograph was one of the handguns recovered in the apartment. Id. In particular, no witness had testified that the gun in the photograph appeared to be the handgun that had been recovered in the apartment. Instead, "[the photograph] appears to have been admitted based upon the

11

prosecutor's assertion that she looked at the photo and concluded that the weapon depicted therein appeared to her to be the kind of weapon found under the mattress." Id. at 738 n.1.

The Appellate Division noted that "[p]hotographs are authenticated by testimony of a person familiar with the object portrayed therein that it is a correct representation of such object, in this case one of the handguns found in defendant's bedroom." Id. at 738. The Court held that since no witness had offered such testimony, "the jury was left to speculate as to whether the gun depicted in the exhibit was one of the guns found under the mattress." Id. After finding that the error was not harmless, the court reversed and remanded the case for a new trial. Id.

Here, Det. Funrose testified as to his recovery of the Photograph in the bedroom where Hayes was arrested, and Det. Stokes, the firearms expert, testified that the handgun held by Hayes in the Photograph appeared to be the same type of semi-automatic pistol that was recovered under the mattress. Det. Stokes also testified that the handgun in the photograph was the same distinctive color as the handgun found under the mattress. (Trial Tr. at 92-94; see also Trial Tr. at 220-21 (testimony of Sgt. Butler that the recovered firearm appeared to be the handgun shown in the Photograph)) Det. Stokes admitted that he could not be certain that it was the "exact same gun," because that would require a comparison of serial numbers, and the serial number of the handgun shown in the photograph could not be seen. (Trial Tr. at 93) In sum, unlike in Brown, there was witness testimony addressing the similarity between the handgun recovered and the handgun in the Photograph.[1]

---

[1] Hayes has never disputed that the gun recovered appeared to be identical to the gun shown in the Photograph. See, e.g., Litsky Decl., Ex. N (Mot. to Set Aside Verdict) at 3) ("the gun [in the Photograph] appeared to be similar, if not identical, to the gun attributed to [Hayes] on the day of his arrest").

12

In any event, given the distinctive appearance of the chrome-plated 9 mm. semi-automatic handgun, and the circumstances under which it and the Photograph were recovered, it is far from clear that the trial court erred as a matter of federal law in admitting the Photograph. Under federal law, given the circumstances here, the Photograph would have been admissible in connection with the drug charges against Hayes, because guns are tools of the narcotics trade. See United States v. Muniz, 60 F.3d 65, 71 (2d Cir. 1995) ("[T]here are innumerable precedents of this court approving the admission of guns in narcotics cases as tools of the trade."); United States v. Vegas, 27 F.3d 773, 778 (2d Cir. 1994) ("[T]his Court has repeatedly approved the admission of firearms as evidence of narcotics conspiracies, because drug dealers commonly keep firearms on their premises as tools of the trade." (internal quotation marks omitted)). Moreover, the Second Circuit has explicitly upheld a conviction under 18 U.S.C. § 924(c) – which makes it illegal to use or carry a firearm in connection with a drug trafficking crime – where the defendant's ownership of a firearm was confirmed by "a photograph of [the defendant] holding a gun identical to the one found under the sofa." United States v. Taylor, 18 F.3d 55, 58 (2d Cir. 1994).

Even if the Photograph was improperly authenticated under New York law, this Court cannot grant habeas relief on that basis alone. See Swarthout, 131 S. Ct. at 861 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (internal quotations omitted). Habeas relief for an evidentiary error is appropriate only where a violation of a constitutional dimensions has taken place. Taylor, 708 F.2d at 890-91 ("Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial.") (emphasis in original). "Only

13

when evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,' have we imposed a constraint tied to the Due Process Clause." Perry v. New Hampshire, 132 S. Ct. 716, 723 (2012) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990) (internal quotation marks omitted)).

The Supreme Court has never held that admission of evidence not adequately authenticated under state law is sufficient, in itself, to demonstrate a due process violation. Moreover, Hayes characterizes the trial court's error here as the improper admission of evidence of uncharged crimes or prior bad acts. (See Pet. Obj. at 8-11) Courts have consistently held that a state court's erroneous admission of prior bad act evidence does not provide a basis for habeas relief. See Mercedes v. McGuire, No. 08 Civ. 299(JFB), 2010 WL 1936227 at *8 (E.D.N.Y. May 12, 2010) ("The Supreme Court has never held that a criminal defendant's due process rights are violated by the introduction of prior bad acts or uncharged crimes."); Parker v. Woughter, No. 09 Civ. 3843(GEL), 2009 WL 1616000, at *2 (S.D.N.Y. June 9, 2009) ("Here, petitioner cites no Supreme Court case, and the Court is aware of none, holding that the admission of evidence of uncharged crimes violates the Due Process Clause of the Fourteenth Amendment."); Jones v. Conway, 442 F. Supp. 2d 113, 131 (S.D.N.Y. 2006) ("Given that the Supreme Court has not held that the use of uncharged crimes would violate the Due Process Clause, the Appellate Division's rejection of this claim is hardly either contrary to or an unreasonable application of clearly established Supreme Court law."); see also Tingling v. Donelli, No. 07 Civ. 1833(RMB)(DF), 2008 WL 4724567, at *9 (S.D.N.Y. Oct. 24, 2008) ("Not only would Petitioner's claim fail if analyzed under the . . . precedent cited above, but, under AEDPA, it would also fail . . . as the Supreme Court has not directly held that due process is violated by the introduction at trial of evidence of a defendant's uncharged crimes.").

Finally, given that (1) Hayes was in the bedroom where the gun was found; (2) Hayes's bank statement and personal photographs were found in the bedroom; (3) other photographs showed Hayes in the apartment; (4) Hayes possessed cocaine, and police observed a co-defendant throw cocaine out the window when the police entered the apartment; and (5) Hayes possessed drug paraphernalia of the same nature as the drug paraphernalia found in the bedroom, a rational jury could have concluded – even absent the Photograph – that Hayes was a member of a cocaine distribution ring operating out of the apartment, and that he had at least constructive possession of the gun found in the bedroom. "[I]n light of the other strong evidence of [Hayes's] guilt, . . . [he] has not shown that the admitted evidence removed a reasonable doubt that otherwise would have existed." Tingling, 2008 WL 4724567, at *9.[2]

In sum, even if the trial court's admission of the Photograph violated New York law concerning authentication, Hayes has not demonstrated that he suffered a due process violation that would entitle him to habeas relief.

### III.  JURY INSTRUCTIONS

Hayes argues that the trial judge's limiting instructions concerning the Photograph were inadequate. (Pet. Obj. at 11) In order to grant habeas relief based on a state court's erroneous jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973).

Here, the trial judge instructed the jury that the probative value of the photographs was entirely up to the jury, and that the jury should feel free to disregard any photograph that

---

[2] For these same reasons, this Court agrees with Judge Ellis's rejection of Hayes's claim that his conviction was against the weight of the evidence and was legally insufficient.

15

was not probative of the issues in the case. (Trial Tr. at 51) There is nothing objectionable in this instruction. Hayes sought no specific alternative or supplemental instruction at trial, and he has not identified in this proceeding precisely what instruction the trial judge should have given.

As to the weapon possession count, the dispute about the probative value of the Photograph was clear, and there is no reasonable possibility of jury confusion on this subject. Det. Stokes acknowledged both the need for a serial number comparison before a determination could be made that it was "the exact same gun," and the fact that no such comparison was possible, because the serial number of the handgun shown in the Photograph was not visible. (Trial Tr. at 93-94) The jury had access to the firearm that was seized and to the Photograph, and the jurors could draw their own conclusion as to whether the People had demonstrated that the gun shown in the Photograph was the gun seized at the time of Hayes's arrest.

In sum, Hayes has not demonstrated that the trial court's jury instructions were insufficient, that an additional limiting instruction was necessary, or that the failure to give such an instruction deprived him of due process.

## IV.     PROSECUTOR'S SUMMATION

Hayes objects to the prosecutor's statement in summation that "one picture in particular that's eye catching in this case is George Hayes, in the bedroom, the same bedroom, the same bed, the same person, the same gun." (Pet. Obj. at 9; see Trial Tr. at 270) The Supreme Court has recognized that prosecutorial misconduct on cross-examination and in summation can constitute a due process violation when it "infect[s] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); see also United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002) ("Remarks of

16

the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'") (citations omitted).

Here, the trial judge overruled defense counsel's objection to the prosecutor's statement, commenting that "[the prosecutor] can certainly argue it's the same gun. The jury will figure it out." (Trial Tr. at 270) The judge made clear moments later that the jury was free to accept or reject any of the lawyers' arguments in summation: "You heard the summations a few minutes ago. It is the lawyer's view of what is in the book of the trial . . . . If you think something was not based on the record, is illogical, not helpful, don't use it." (Trial Tr. at 282-83)

For the reasons discussed above, a rational jury could have inferred that the handgun Hayes was holding in the Photograph was in fact the handgun that the police recovered in the bedroom. Accordingly, the prosecutor's argument in summation does not constitute "egregious misconduct" that deprived Hayes of due process. Elias, 285 F.3d at 190.

## V.     TRANSCRIPT ACCURACY

In his Amended Petition, Hayes argues that the transcript of the trial is inaccurate because it does not reflect that the trial judge ruled that the Photograph was admissible "for all purposes." (Am. Pet. at 5) He argues that this error denied him of his right to appeal. Because Hayes does not include this argument in his objections to the R&R, the Court will review this portion of Judge Ellis's R&R for clear error. See Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB)(FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) ("'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are

not clearly erroneous.'") (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

> Where the petitioner in a federal habeas proceeding contends that the record was inadequate to permit a constitutionally fair appeal, [the court] should consider the extent of the State's fault in failing to preserve the record, the extent of any prejudice suffered by the petitioner, and whether the state provided the petitioner with an opportunity to reconstruct what was lost.

Van Stuyvesant v. Conway, 03 CIV. 3856 (LAK), 2007 WL 2584775, at *37 (S.D.N.Y. Sept. 7, 2007).

Here, there is no clear error in Judge Ellis's findings that Hayes was given a fair opportunity to resettle the record, has not demonstrated any error in the transcript, and – in any event – has not shown any prejudice resulting from the omission of the statement he claims is missing from the record. (R&R at 9)

In his written decision rejecting the reconstruction motion, the trial judge noted that

> [t]he accuracy of the transcript cannot be questioned merely because defense counsel's memory of the ruling is different than the transcribed records. Attorneys, witnesses, and the court often misremember what was said in court, and disputes about what was said are resolved by examining . . . the transcript or asking the reporter to read the stenographic notes.

(Litsky Decl., Ex P at 4) In response to Hayes's motion for reconstruction of the record, the trial judge "examined the transcript and [found] no reason to question the accuracy of the transcript." (Id.) The court noted that "[t]he significant disparity between what defense counsel alleges he heard this court say and the transcribed ruling rules out any possibility that the reporter misheard a word or phrase when this court announced the ruling." (Id. at 5)

Hayes has not demonstrated that the trial transcript is inaccurate, much less that any such inaccuracy justifies habeas relief.

## **CONCLUSION**

For the reasons stated above, this Court adopts the findings and conclusions set forth in Judge Ellis's R&R. Hayes's petition for a writ of habeas corpus (Dkt. No. 5) is DENIED. The Clerk of the Court is directed to mail a copy of this Order to George Hayes (pro se), No. 07-A-4821, Green Haven Correctional Facility, P.O. Box 4000, Stormville, NY 12582, and to close this case.

Dated: New York, New York
      July 30, 2013

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge